Good morning, everyone. Mr. Marshall, kindly call the next case. Yes. Your Honor, this case is a docket 2-17-0144. Josh Orenstein, plaintiff at count, v. Real Urban Barbeque V.H., LLC, Chamber Apartments, LLC, and G.H.T.C. Lots of 70, defendants and athletes. Cardinal on behalf of the plaintiff's opponent, Mr. Jared Weiss. Cardinal on behalf of the defendant's athlete, Mr. John E. Larson. Sir, Mr. Weiss, on behalf of the appellant, you may proceed. Good morning, Your Honors, and may it please the Court. Good morning. My name is Jared Weiss for plaintiff appellant Josh Orenstein. This Court should reverse the lower court's finding of summary judgment because Real Urban Barbeque created a hazardous condition, which Mr. Orenstein encountered, causing him to fall and sustain injuries. Summary? Mr. Weiss, there's one question I need to ask first. There were three counts against Real Urban Barbeque, three counts against the W.H.T.C. Lots, the third count being a restatement count, correct, in the complaint? This appeal is only against Real Urban Barbeque. I understand that, but we're looking at the complaint as a whole. A thorough search of the record has not found an order dismissing count three against Real Urban Barbeque. Are you familiar with an order, or are you familiar with why there is no order in this particular record? Your Honor, I'm not familiar. My understanding was that the case was dismissed on summary judgment. But the order reads for Real Urban Barbeque counts one and two, not three. As for V.H. and I can never get them right, T.C., it says summary judgment is granted on their behalf. So there appears to be something missing. And so I guess your understanding is Real Urban Barbeque, all counts against them were dismissed, correct? Correct. All right. And I will ask counsel himself when he steps forward. All right. I'm sorry. Now you may proceed. Summary judgment was improper in this case for the following reasons. First, Real Urban Barbeque breached its duty of care when its employee tracked greasy water onto the ladder, which was the roof's only access point. And second, there is circumstantial and direct evidence to support the reasonable inference that Mr. Ornstein fell because of the defect in the ladder, which was the greasy water. Mr. Clayton. I have a preliminary question. How does the open and obvious danger doctrine apply in this case? Does the defendant owe a duty to warn a plaintiff about an obvious and open danger that the plaintiff can see? Your Honor, the open and obvious, this is not an open and obvious condition in this case. Here, Mr. Ornstein testified that he was not aware that there was grease on the ladder. Therefore, he came back. Aside from the ladder, the point was is that, I mean, he saw that the grease-laden water was on the roof because he opened the air conditioning unit, correct? Correct. He obviously was aware of that. Right. Okay. So is it an obvious, open and obvious danger that if you walk through grease-laden water and leather shoes and get on the ladder, it might be a problem? I mean, why is it on the landlord? Well, Your Honor, whether the open and obvious condition applies is a question of fact. And even if you find that the condition was open and obvious, based on the grease being just generally on the roof, the deliberate encounter exception applies because Real Urban Barbecue anticipated that Mr. Ornstein would have to descend the ladder because it was the only way to get off the roof. And Mr. Ornstein had been up on that roof on three separate occasions. But, counsel, there seems to be no dispute that there was this greasy water through which he walked. So I'm not sure why it's a question of fact as opposed to a question, and that condition being a question of law. It's a question of fact because Real Urban Barbecue's employee who's on the roof with Mr. Ornstein, she stood in that greasy water immediately before descending the ladder, and it follows that she tracked the greasy water onto the ladder's rungs, which was a cause of Mr. Ornstein's fall. But isn't that somewhat speculation? How do we know that? Did you allege, I mean, that she tracked the greasy water onto the rung? I don't know. Didn't he have a memory problem? Did he ever specifically say that he stepped on the first rung of the ladder and then he fell? Can you even say how or why he fell? Correct, Your Honor. In this case, because of the alleged negligence in the fall, he cannot recall anything prior or anything after turning to descend the ladder. However, it's not speculation that the grease was on the ladder. Speculation is defined as— Well, what evidence do we have that the grease was on the ladder? The evidence that we have is that the Real Urban Barbecue employee was standing in the grease-laden water immediately prior to descending the ladder. But Mr. Ornstein also walked through that water in order to get to that ladder, didn't he? Yes, Your Honor, he did. Even if she walked through the water first and then he walked through the water, if she had greasy water on her feet, on her shoe soles, so did he, correct? Correct, Your Honor. And she didn't fall. She did not fall. But I think if you're looking at it from that approach, we have to take a step back as to why the greasy water was even on the roof. The evidence in the record shows that Real Urban Barbecue negligently maintained its HVAC unit, which caused this grease and buildup in the unit to form, ultimately causing the leak. And Mr. Ornstein had been on that roof before? On at least three separate occasions. And he was aware of this, as you say, failure to maintain situation? Based on the prior service calls that Real Urban Barbecue had to make, he suspected that the clog in the drain was due to the grease buildup, yes. Why then would he open this valve without a bucket or some sort of utility basin to prevent what occurred? This was an easily serviceable job. All he had to do was unscrew the PVC pipe, and that allowed the water that was stuck in the HVAC unit to drain out. Now, he testified that even if a normal service technician would have done this job, they would have done the same thing. The way that this drain is designed is that even in normal operation, it's designed to drain onto the roof. Mr. Ornstein testified that the only difference in this case, if a service technician actually cleaned it, was after they drained it, they would have done a more thorough cleaning of the unit itself. Didn't the pleadings also reveal, though, that there was a way around this admittedly grease-laden water? Didn't they reveal that Mr. Ornstein could have moved around it? It's possible, Your Honor. What happened in this case was as soon as he unplugged the drain, there was about three gallons of greasy water that spread out in the direct path between the HVAC unit and the roof patch. So as it drained, Gina and Mr. Ornstein were standing right next to it. He couldn't have walked around it? I thought the pleadings indicated he could have gone out of his way, 30 feet out of his way, but he could have walked around it. But in this case, the railroad and barbecue employee didn't walk around it. And she stood on it immediately before descending the fall. And the reasonable inference in this case is that from standing in the greasy water immediately before descending the ladder, that she tracked that greasy water onto the ladder's rung. But is that speculation? Did she acknowledge that she tracked the grease-laden water onto the ladder? She went down the ladder first, right? It's not speculation, Your Honor. I argue that it's circumstantial evidence. Speculation is the non-existence of a fact that is just as probable as its existence. So in this case, it would have to be just as probable that there was no grease on the water. And if you're standing in a puddle of greasy water, it's more probable that you're going to track that greasy water onto your next steps. But no one had fallen when this had been done on prior occasions, though. So how is that approximate cause, since on prior occasions, we know that the air conditioning unit had had water and grease removed from it as well in the same manner, but neither or none of the other persons who had done it had fallen? In those situations, Your Honor, there's no evidence that there was anybody else up on the roof other than that single person. And on the date of the incident, in our case, a Real Urban Barbecue employee was up on the roof with Mr. Orenstein. So there's no evidence in the prior occasions that there was anybody up on the roof beforehand that stepped in the greasy water and then tracked the greasy water onto the ladder. Well, let's assume for the sake of the argument, as we said, that everything you say is absolutely true. Regina was there. She went through the puddle, and she had grease-laden water on her shoes. Is there any evidence that your client fell stepping on to the ladder at all? Well, due to the injuries that he sustained, he can't recall specifically touching the ladder, but that should not deny him from getting his day at trial. Why not? Because you're saying that obviously there was this negligence. The cause of the plaintiff's injuries was the fact that grease-laden water was on the ladder, right? Correct. Because that's how he was alighting from the roof. Well, if there's no evidence he ever even stepped on to the ladder in the first place, how do we fill in that gap for you? Your Honor, McKenna v. Duofas is directly on point to that issue of causation. In that case, it involved an unwitnessed fall from the same type of roof access ladder in this case. In that case, the person descending the ladder passed away, so he wasn't able to provide any testimony. The only testimony in that case came from somebody that witnessed him approaching the ladder and heard him fall subsequently thereafter. Similarly, in this case, there were no witnesses to the actual fall, and Mr. Orenstein can't say that he contacted the ladder. But in McKenna, there was no evidence at all that the decedent in that case contacted or touched the ladder. The only—but the court found the inference to be reasonable that he fell because of the ladder. Similarly here, Mr. Orenstein provided even more facts than in McKenna. He was able to directly testify that he was at that roof hatch. He testified that he recalled turning to descend the ladder, and then there was post-occurrence confirmation of the fall. What kind of shoes did Mr. Orenstein have on? He had leather loafers. And what kind of shoes did Gina have on, if you know? There's no evidence as to what type of shoes that she had. Okay. A leather loafer has what kind of a sole? It can depend. It can be rubber. I would say that's usually the most probable. Well, in any event, most loafers that I've seen have no ridges on them to—it's a flat. Correct. So if he walks through that grease-laden water and, for this argument, hits that first step, what is his—is it going to be a steady step? If his shoes are similarly covered, and if we must assume that Gina's shoes are covered, we have to assume that his are covered, correct? He didn't wipe them off. Right. He didn't wipe them off. To respond to Your Honor, it's unquestioned that Gina descended the ladder first and that she was standing in the greasy water. Based on common experience, when you have a greasy surface rubbing against a greasy surface, there's going to be less friction. So with Gina's actions of tracking that greasy water onto the ladder, there'd be less friction, and it increased the risk, and it increased the chance that Mr. Ornstein would slip and fall, even if he did step in the greasy water. Was Mr. Ornstein there that day to go onto the roof? So he was there that day to discuss ductwork modifications, and he was subsequently called or subsequently informed that there was a leak on the roof. But because of all the prior issues of leaks on the roof, he suspected what the problem would be and knew that it would be easily serviceable. Was he dressed as a serviceman that day and prepared to do service, or was he dressed as a salesman to go do some sales? There's no evidence in the record that he dresses any other way. He has been up on this roof on three separate occasions and presumably wore the exact same shoes. On the other occasions, did he have his prosthetic attached to his arm, or was he in a similar situation he was in that day? Whether he had the prosthetic attached or not is not really an issue, because he can't grip with the prosthetic.  So the way that he descends the ladder is he uses that bend in his elbow to hold himself close. So he testified that he's always able to maintain three points of contact on the ladder and is always able to be safe when descending and ascending ladders. You rely heavily on this McKenna case, but it is distinguishable in a couple respects, is it not? Because in McKenna, there was specific evidence of a defect in the ladder and evidence further that had been introduced that the plaintiff was always very careful on ladders. And so the court found that was enough circumstantial evidence there, even though the witness hadn't seen the decedent fall. So we don't have exactly the same thing here. So in McKenna, the defect that existed was the ladder itself. In our case, there's circumstantial evidence of the defect and that greasy water was tracked on to the ladder. Anything further? No, not now. Thank you. All right. Thank you very much. We'll have an opportunity to address the court again in rebuttal. Thank you. All right. Thank you. All right. Mr. Malarczyk, you may proceed. Thank you, Your Honor. This may please the court. And I will ask you the same question. I expected you to. And again, John Malarczyk, it's my privilege to represent the defendant, Pelle, Real Urban Barbecue. I count on our judge to address your question. And I honestly do not remember count three of the complaint, whether it was addressed to Real Urban Barbecue or not. My recollection is that all parties and the court were under the impression that my motion for summary judgment addressed all issues related to Real Urban Barbecue. Well, I'm not questioning the fact that it addressed them. I'm questioning the fact that the way the order is written, and I know that after you heard the question, you were looking feverishly for something. The order, which I assume was written by you. It was. Indicates the summary judgment is granted as to counts one and two. There were three counts against you, the third count being very similar, if not the same, as the count against the landlord on the restatement where there is some discussion in the argument. So I guess the question is if we don't have everything. Let me also say in that particular order, there is a dismissal of the counterclaims that had been filed. And so on its face, it appears that that was the intention. I'm looking for the actual document that dismisses the case and dismisses all matters of the case. And to your knowledge, it does not exist. Is that correct? If count three is a pleading against Real Urban Barbecue, then the order that was written in regards to our motion for summary judgment is simply a scrivener's error. And there is no specific order that references count three. I will say this. Count three may have been, I think you referenced a restatement allegation. Address the restatement, I think, 314. Yeah. And I think that's related to premises liability. Correct. Which is, in this case, they were the tenant, not the building owner. And we did argue in our motion that there was no duty because this was a common area. And the common area was under the contract. The lease was the responsibility of the landowner, which in this case was Shaker Apartments or VHTC. Right. But that is something that may have been missed in that order. Okay. To address the actual issues in this case, I think all three justices have addressed the fundamental flaws with Plaintiff's Appeal here. There are a number of issues that we raised on our motion that the court granted at the trial level on all of our issues. Well, there seems to be, at least in counsel, Mr. Wise's presentation, the grease-laden water may be an open and obvious danger, but he's saying that there is no, there's nothing of that open and obvious nature on the ladder, and therefore he was, his client, you know, was injured by the grease-laden water on the ladder. I guess we need to address if there's this one issue that's open and obvious, can we ignore it and go to the second issue, or do we have to address that first? Two parts to that, two responses. Number one, I don't think you can ignore it. I think it's all part and parcel of the same event, the same condition, so to speak, in that the plaintiff created the condition. He walked through it. He testified he knew walking through it could get grease and water on his shoes. He knew that stepping onto a ladder with grease-laden shoes was a dangerous condition, something that he affirmatively may or may not have done in this case. That's all open and obvious. It's more open and obvious when you consider that he's an owner of an HVAC company who has done this kind of work before, been on roofs before, knew exactly what to do when he opened the drain to unclog this, when property owners and residential owners hire outside contractors who specialize in a particular field, they expect and reasonably expect that these people will know what they're doing, will know what the usual customary hazards are in their work. And the same would hold true here, that it's a reasonable expectation that a person in Mr. Orenstein's position would know that if he creates a greasy water puddle on the roof and walks through it, that it's going to be dangerous for him to descend that ladder without cleaning off his shoes. What about his argument that the open and obvious danger doctrine really raises questions of fact that should be decided by a jury? Well, what he's trying to argue is the exceptions, and he raises in his brief, I think today he only talked about the deliberate encounter exception, but the deliberate encounter exception, all the cases he cited, they all deal with economic compulsion being the motivator, the root cause for deliberately encountering a hazardous condition. Here, there's no economic compulsion. This man didn't have to do this work. He's not a technician. He's not an HVAC service person. He's a salesman and an owner of the company. He wasn't out there to respond to the service call that had been made. Again, he's the owner. He doesn't have to do this work. He can hire a service tech to go out and presumably get paid for his work. So there's no economic compulsion at the root of his deliberate encounter. Economic compulsion is one issue. Would it encompass economic convenience because he was doing this as a convenience, or would that be reading a whole other situation into this exception? I think it's reading a different situation. I don't find any case law that deals with economic convenience. Most of the time, these are laborers who have no choice. They've got to respond to, they have to do the job that their foreman or their supervisor is telling them to do. This is an owner who didn't have to do that. But more importantly, what I was about to say is that Justice Hudson mentioned that he didn't have to walk through the water. He could have walked 30 feet around, which is only 10 yards. It's the first down in football. That's all he had to do to get around this and not create this condition for himself. If he's a Bears fan, that's a tough 10 yards. It might be. Does Gina help your case? I think Gina's affidavit is the linchpin of this case. The reason is because it's the only direct evidence regarding the condition of the ladder. Counsel goes on and on about circumstantial evidence, and that's all relevant if you don't have direct evidence. We have the direct testimony in an affidavit form from Gina Booth who said, I went down the ladder, and she's going down feet first, remember, so her hands are going on the very rungs that her feet have just touched. No grease at all. Not slippery, nothing. That's direct evidence. Now, her deposition wasn't taken by plaintiff's counsel, so all we have is the uncontradicted direct testimony about the condition of the ladder. So all of the plaintiff's argument in his briefing here today is based on his speculation that grease was tracked onto this ladder rung by Ms. Booth. For your light and most favorable to him circumstantial evidence, you're saying it's totally undercut by the unchallenged affidavit of Gina. Exactly. I don't think that circumstantial evidence is relevant in the analysis on what the ladder looked like or what condition it was in, given the direct testimony that there wasn't anything on there. Now, counsel actually raised a legal provision from the case law when you're talking about approximate cause analysis that the existence of a condition is just as probable as if it wasn't in existence. And if that's true, then it's speculation. And the case law, even McKenna and Keating, I cited, Stoyakovich, which plaintiff relied on heavily, they all say that same thing. And what we have here is, and again, Your Honor's pointed this out, not only did Ms. Booth walk through this grease-laden water, according to the plaintiff, but the plaintiff walked through it. And it's just as probable that there was no grease on the ladder when the plaintiff decided to descend it as it is that there was, because the plaintiff tracked water himself. And if Ms. Booth, let's say she walked down it and there wasn't any, it's just as probable that he had water on the bottom of his shoe, and when he stepped down, he slipped because of it. And that right there defeats circumstantial evidence as being significant enough to raise a question of fact. What that does is it means it's speculation, which is exactly what this entire case is based on. Isn't there another scenario that could have occurred that he never hit the step at all? That's another scenario as well, and I raised that in the trial court argument because the plaintiff didn't know if he did or not. Now, again, what's probable? Is it probable that he had grease-laden water on his shoe and slipped at the top of the roof before getting on the ladder? It is. But again, all these theories or hypotheses are all speculative. Aside from that, I know I raised other issues with respect to condition versus cause, and I want to mention that just real briefly because counsel talked about the creation of the clogged filter as being a cause of this incident because they had to go out there and service it. Well, I mean, that's just ludicrous. That's suggesting that anybody who has a problem in their home, in their business, that requires service is automatically negligent for any accident that occurs to a technician. Well, I think there's a little more to his argument in that it was understood or it was recommended that this setup should be different so that this clog could not occur, and either Urban Barbecue or whoever was involved did not take that suggestion. And that's a good point to address because all the plaintiffs said is they didn't hire their company to do it. They didn't say there's no evidence that we didn't hire a different service company to do it. On top of that, as I pointed out in the brief, the whole design of the ventilation system funneling into this air conditioning unit or near the air conditioning unit was done by the plaintiff's business. They're the ones that set up this entire arrangement that enabled the air to funnel and the greasy, laden air to funnel into the air conditioning unit itself. Was this design accomplished after discussion? This I don't remember from the record. After discussion with Urban Barbecue and they said, no, we're not going to go to that next level, just do it this way, or was this the only one suggested and accomplished? Again, at the trial level, the only deposition taken was Mr. Orenstein. There's no evidence with respect to how or why it was designed the way it was, simply that. He did testify that his company did the design and application or construction. Construction and installation. Correct. Mr. Larson, Mr. Wise has cited two and appears to be relying heavily on the McKenna case as substantial support for his arguments. What do you have to say in response to that? Well, with McKenna, like some of the other cases where circumstantial evidence was used to overcome the speculation argument, we have, as Justice Young, I hope I pronounced that right, Yes, you did. pointed out, there was evidence in that case. Remember, that is a case that went to jury verdict, so there was ample testimony and opinions given in that case that the ladder itself was an improper design and there were multiple violations from expert testimony about the ladder itself. Here, we have none of that. We don't have an expert. We don't have any evidence that there was much less a defect in the ladder but that there was grease-laden water on the ladder. It's all just speculation as to where or what was the condition of it. So that is the key distinction when you look at all these cases because most of these cases, when they involve reversal, are found in jury verdicts where there's been ample testimony about defects in the particular item. What's the other one? Stoyakovich and it might be Baker. Something with a B. Brock. Block. Sorry, Block. Same thing. Multiple expert opinions about defects in a particular condition. What was the discovery status of this particular case and had experts been tendered yet or the concept of experts or did this just come after the, I guess, the motion and the affidavit? I mean, where were you in terms of discovery? Discovery was closed and we filed one for summary judgment. We took the plaintiff's deposition. The plaintiff did not take depositions of anybody. But discovery was closed. And was the tendering of experts, if any, likewise disclosed? It had passed. Okay. Was there any physical evidence retained or obtained from that ladder in that small room concerning this incident? Yeah, the ladder is a fixed metal ladder against the wall in a common utility room. That ladder was still in existence. The plaintiff, I think a co-worker had been out there days after, took pictures of the ladder. It was inspected by a consultant for the plaintiff, I believe for the plaintiff. And so it was in the same condition after. Nothing was destroyed, removed. But no signs that if there was grease, it would still be there. Correct. Nothing. Anything further, Mr. Molarski? No, that's all. All right. Thank you very much. Thank you. Mr. Wise, you may address the Court of rebuttal. Thank you, Your Honor. A few points on rebuttal. First, to address the open and obvious condition. Whether a reasonable person would find the grease on the ladder to be apparent and appreciate that risk is a question of fact, which precludes summary judgment on that issue. Second, to the deliberate encountering exception, the test is whether that harm may be reasonably anticipated when one has reason to expect that a person will proceed to encounter the known or obvious danger because the advantages outweigh the risk. Economic compulsion is not a necessary component of that test. The test is whether the advantages would outweigh the risk. Could it only be economic compulsion? Well, in this case, Mr. Lawrence, even if you say that there was economic compulsion, Mr. Lawrence, he was on the roof, pursuant to his job, and he had to get off the roof. So he would have encountered the ladder no matter what, and I think he actually did testify to that. But he could have walked around that particular puddle. And so could Gina. He could have directed Gina to walk around it. I mean, he was in charge up there. And familiar with, as you had indicated, the condition, what would have happened or what was going to happen when the vent or the duct was open. So he could have directed her to not walk in it. I think there's a misunderstanding as to his experience. Mr. O'Hernstein had actually, this was the first barbecue restaurant that he ever worked on. He had never seen in prior work, in his prior experience, conditions like this one. So when he got up there to the roof that day, he knew the drain was clogged, based off the prior service tickets, but he didn't know the extent of how much greasy water was clogged up in there. But the bottom line is it didn't cover the entire roof. There were places he could have walked, Gina could have walked, anybody could have walked that would have avoided that particular problem, correct? That's possible. And that would go to contributory negligence, maybe. But at this stage, we're trying to determine if there's a triable issue of fact. And in this case, it's undisputed that Gina stood in that greasy water immediately before descending the ladder. And the reasonable inference is that Gina tracked the greasy water onto the ladder. But she said in her affidavit that as she went down, she went feet first, just like most persons would do, she got down that ladder without any problems, with having to go past the rugs that she had just stepped on using her hands. Yes, you're correct, Your Honor. And to address the point that Mr. Malarczyk made, there's no evidence that Gina used her hands to go one by one. She could have been gripping the sides. We don't know that. And viewing the inferences in the light most favorable to the plaintiff, there's no evidence that she would have touched each ladder rung. But more to the point, though, didn't her affidavit, as he has represented, didn't she say in the affidavit that she did not, that she alighted the ladder, she did not observe any substances on the ladder? Yes, Your Honor, she did. That's what the affidavit said. But plaintiff's testimony is that because of her standing in the water immediately prior to descending the ladder, that she did track the greasy water on the ladder. And so long as you find that inference to be reasonable, that issue should go to the jury. But that's his point. He's saying this is not a case, particularly you alighted on the ladder, that you're saying inferences and circumstantial evidence would support your argument. He's saying that's undercut by the on-challenge affidavit that says the director, there was nothing at the ladder. Doesn't that carry the day over inferences? No, Your Honor. Plaintiff can still present circumstantial evidence to show that there was greasy water on the ladder. And that would create a question of fact precluding summary judgment. But it only creates a question of fact if there is a dispute. And we have an affidavit indicating she saw nothing. He is saying because she stood in it, she carried it with her. She may have. But the nature of her shoes may have prevented the transfer. There are all sorts of things that could have happened, including the fact that his leather soles or his rubber soles were also coated, that he might have missed the step altogether. There are lots of things that could have happened. And some of those issues that you raised would go to credibility and weight. At this stage in the litigation, in viewing the facts and evidence in the light most favorable to Mr. Orenstein, Gina tracked greasy water onto the roof. And based off the inferences that are found in McKenna and Stoyakovich, it can be reasonably inferred that that was the cause of Mr. Orenstein's injuries. And so the question is, are you saying that the defense is going to support the defense assuming he hit, he even put his foot on that ladder to begin with? And we don't know that. Isn't that correct? We're going to say it's an inference that he did. Based off McKenna, where there is no evidence that he touched the ladder either, that's still going to the jury and the court denied the defendant's motion for a judgment of an outstanding verdict based on that inference. While we're talking about that, let me ask you a very pointed question. Apparently, and it doesn't seem to be a dispute, that the ladder was clearly defective in McKenna. We know that the ladder was defective. Isn't it different in here where you're saying it's an inference? There was no direct evidence that there was something on the ladder. Correct? Correct. Okay. Anything further? I don't have any questions. Mr. Wise, anything further? Although there is no direct evidence, a question of fact remains as to whether there was a defective condition, which would preclude summary judgment. Thank you. Thank you. All right. I'd like to thank both counsel for the quality of their arguments here this morning. The matter will, of course, be taken under advisement. A written decision will issue a due course. We will stand in recess to prepare for the next case. Thank you.